UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RASHID ABDUR-RAHMAN, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>JANET NAPOLITANO, et al.,<br><br>           Defendants. | CASE NO. C09-1269RSM<br><br>ORDER ON MOTION FOR A PRELIMINARY INJUNCTION |

This matter is before the Court for consideration of a motion for a preliminary injunction filed by plaintiffs. Dkt. # 32. The Court heard oral argument on this motion on Monday, November 1, 2010 and has fully considered the parties' memoranda and exhibits. For the reasons set forth below, the motion shall be granted as to the alternative relief requested by plaintiffs.

FACTUAL BACKGROUND

Plaintiff Rashid Abdur-Rahman, a computer programmer and citizen of India, entered the United States in 2000 as the beneficiary of a non-immigrant H-IB work visa.

His wife and two children, also plaintiffs in this action, accompanied him on visas as dependants. The family has lived lawfully and continuously in the United States for nearly ten years, during which time they had another child. This child, a United States citizen, is the fifth plaintiff in this action.

Plaintiffs allege in their First Amended Complaint that Mr. Abdur-Rahman's employer filed I-129 petitions to extend his H-IB status in 2001, 2003, and 2004, and all were approved. The employer[1] submitted I-129 petitions to extend plaintiff's employment in 2006 and 2007, but these were not timely adjudicated. As a result, the company could not employ Mr. Abdur-Rashid and he became unemployed in March, 2007. Amended Complaint, Dkt. # 51, ¶¶ 19-30. That same month, the employer filed an I-140 immigrant visa petition, seeking to employ Mr. Abdur-Rashid as a Programmer Analyst, based on an approved Department of Labor certification for the position. *Id.*, ¶ 29.

On August 3, 2007, the four family members filed I-485 applications for adjustment of status to Lawful Permanent Resident ("LPR"), based on the pending I-140 petition. At this time, there was a visa available for Mr. Abdur-Rahman in the Second Preference category, as a worker with an advanced degree. Amended Complaint, ¶ 34. The family members also filed four I-765 applications for Employment Authorization Documents ("EAD"). The I-140 petition filed in 2007 was approved June 23, 2009. *Id.,* ¶ 46. In the meantime, the two pending I-129 petitions were denied, in January of 2009. *Id.*, ¶ 42. These denials were appealed by the employer. The United States Customs and

---

[1] Plaintiff was employed during this time by either Wiztech, Inc., or its subsidiary Intellibytes, Inc. For the purposes of this factual recitation, the Court does not distinguish between the two and shall refer to both simply as plaintiff Abdur-Rahman's employer.

Immigration Service ("USCIS") Administrative Appeals Office ("AAO") issued a decision dismissing the appeal of the 2006 I-129 petition on June 29, 2009; the appeal of the 2007 I-129 decision remained pending. *Id*., ¶ 49. On July 10, 2009, USCIS denied the plaintiffs' I-485 applications for adjustment of status, on the basis that the 2009 denial of the 2006 I-129 petition placed them out of lawful immigration status at the time the I-485 applications were filed.

Plaintiffs filed this action in September, 2009, originally asserting jurisdiction under the Administrative Procedures Act ("APA") and Mandamus Act, and seeking review of the denial of the 2006 and 2007 immigrant benefit applications. After filing, the parties negotiated and defendants agreed to re-open the I-485 applications for adjustment of status, as well as the 2006 and 2007 I-129 petitions. Dkt. # 17. The stipulation specifically states, "The Plaintiffs' I-485 adjustment of status applications are now pending. **Plaintiffs' travel documents and employment authorizations remain valid and they are eligible to renew them at expiration**." *Id*. (emphasis added). This stipulation was entered by the Court as an Order. *Id*. The parties also entered several stipulations to hold the matter in abeyance pending resolution of the underlying administrative proceedings, with the latest agreement extending the stay until August 31, 2010. These stipulations were adopted by the Court and entered as Orders. Dkt. ## 23, 25.

The family was during this time living in Western Washington and Mr. Abdur-Rahman was working for Cascade Engineering ("Cascade"). Cascade filed a new H-1B petition which was approved on June 28, 2010. Mr. Abdur-Rahman and his non-citizen family members were required to apply for the necessary visa outside the US, so the

1  family planned to travel to India for this purpose. Amended Complaint, Dkt. # 51, ¶¶ 54,

2  55.  To insure that their travel outside the United States did not constitute an

3  abandonment of their adjustment of status applications, the four non-citizen plaintiffs

4  each submitted a Form I-131, Application for Reentry Permit, also known as "Advance

5  Parole."[2]  Plaintiffs' counsel in this action filed an Entry of Appearance with each I-131

6  application.  Amended Complaint, ¶ 56.  Two of the four I-131 applications were

7  initially rejected on the erroneous basis that the applicant did not have a pending I-485

8  application.  *See*, Dkt. # 26-5.  Plaintiffs filed a motion to enforce the previous stipulation

9  regarding the status of their I-485 applications, which stated that they were still pending.

10 Dkt. # 26.  After further delay, totally a month in all,[3] the four I-131 applications for

11 advance parole were approved, and plaintiffs withdrew their motion to enforce the

12 stipulation.  Dkt. # 30.

13      With advance parole documents in hand, the family departed for India on July 26,

14 2010, for what was intended to be a one-month visit.  The two older children in the

---

[2] Regulations promulgated by the Department of Homeland Security state, in part, "The travel outside of the United States by an applicant for adjustment who is not under exclusion, deportation, or removal proceedings shall not be deemed an abandonment of the application if he or she was previously granted advance parole by the Service for such absences, and was inspected and paroled upon returning to the United States." 8 C.F.C. § 245.2(a)(4)(ii)(B).  The regulation goes on to state, "If the adjustment of status application of such individual is subsequently denied, he or she will be treated as an applicant for admission, and subject to the provisions of section 212 and 235 of the [Immigration and Naturalization] Act."  *Id*.
    On the other hand, travel outside the United States by an applicant for adjustment of status "who is in lawful H-1 or L-1 status" shall not be deemed abandonment if upon return, "the alien remains eligible for H or L status, is coming to resume employment with the same employer for whom he or she had previously been authorized to work as an H-1 or L-1 nonimmigrant, and, is in possession of a valid H or L visa (if required.)  8 C.F.R. § 245.2(a)(4)(ii)(c).

[3] This delay forms part of the basis for plaintiffs' due process claims.

1 family needed to return by September 1, 2010 in time for the start of the school term.

2 They applied at the United States consulate at Hyderabad, India for their H-1B visa on

3 July 30, 2010.  The visas were not issued.  Amended Complaint, Dkt. # 51, ¶ 62.   The

4 previous day, on July 29, 2010, the AAO issued a decision revoking the previously-

5 approved I-140 immigrant worker petition submitted by plaintiff's previous employer,

6 Wiztech/Intellibytes.   Plaintiffs, as the beneficiary rather than the petitioner on this

7 petition, did not receive notice of this revocation either personally or through counsel.

8 *Id*., ¶ 64, 69;  Declaration of Devin Therriot-Orr, Dkt. # 35, Exhibit H.   This revocation

9 retroactively rendered plaintiffs "out of lawful status" in 2007 when they applied for

10 Adjustment of status to LPR.  Their I-485 applications were denied on August 11, 2010.

11 Declaration of Devin Therriot-Orr, Dkt. # 35, Exhibit I.   Again, neither plaintiffs not

12 their current counsel received notice of this action.  Notice was sent instead to plaintiffs'

13 former counsel in the I-129 and I-140 worker benefit petitions, despite the fact that

14 plaintiffs had constantly kept their United States address current and new counsel had

15 entered an appearance on their behalf with the filing of the I-131 applications.  Amended

16 Complaint, Dkt. # 51, ¶¶ 72-74.  Counsel's representation in this action led to the re-

17 opening of their I-485 applications in October of 2009.  Dkt. # 17.

18  Unaware that the I-485 applications had been denied, plaintiffs boarded their

19 flight for their return to the United States.  They arrived at Chicago on August 30, 2010

20 and were denied entry.  Plaintiffs state that their advance parole documents were seized,

21 they were denied an opportunity to speak with their attorney, and their cell phone was

22 taken away.  Declaration of Rashid Abdur-Rahman, Dkt. # 33.  When plaintiff Abdur-

23 Rahman  protested that they had a case pending in this Court and provided copies of court

24

1  documents, including the stipulation regarding the I-485 application, a Customs and
2  Border Patrol ("CBP") agent stated that the case had been "withdrawn." *Id*., ¶¶ 7-8.
3  Plaintiffs were given the choice between (a) withdrawing their application for admission
4  and returning immediately to India on the same airplane that brought them to the U.S., or
5  (b) spending a night in detention (including the children), and being deported the
6  following day, with the resulting bar on re-entry.[4]  Amended Complaint, Dkt. # 51, ¶ 75;
7  Declaration of Abdur-Rahman, Dkt. # 33, ¶ 9.  Although plaintiffs' youngest child, as a
8  U.S. citizen, was "admitted", no one explained to the family how their three-year-old
9  child could enter the United States without his parents. *Id,*, ¶ 11.
10       Faced with these choices, plaintiffs elected to return to India rather than face a
11 night in detention and deportation with the consequent bar to re-entry.  Plaintiffs deny
12 that their withdrawal of their application of admission was "voluntary" but instead was
13 coerced.   After the decision was made to re-board the airplane to return to India,
14 plaintiffs were allowed one telephone call, to someone other than an attorney.  Plaintiff
15 Abdur-Rahman elected to call his brother, a U.S. citizen. *Id*., ¶¶ 12, 13.
16       After their return to India, plaintiffs amended their complaint to add two
17 additional causes of action based upon their denied entry.  They contend that they were
18 denied due process by misapplication of agency rules and regulations, including denial of
19 an opportunity for a hearing, denial of an opportunity to speak to counsel, lack of notice
20 regarding their I-485 and advance parole revocation, and other irregularities.  Amended

---

22  [4] It appears that CBP agents did not advise plaintiffs of the provision for temporary parole into the United States under the "urgent humanitarian reasons" or
23 "significant public benefit" considerations which may be applied to inadmissible aliens (particularly juveniles) in expedited removal proceedings under 8 C.F.R. § 235(3)(b).  8
24 C.F.R. § 212.5(b).

Complaint, ¶¶ 158-168.  They also contend that their right to equal protection was violated because they are members of a "suspect class" (Muslim), and were treated differently than other arriving, non-Muslim aliens.  The two women in the family wear *hajib* and are thus "identifiably Muslim."  Amended Complaint, ¶¶ 169-173.

Plaintiffs have now moved for a preliminary injunction, asking that the Court either (1) set aside the revocation of the I-140 petition and the denials of the I-485 applications, and direct the agency to readjudicate the applications in accordance with applicable statutes and regulations, or (2)  find that the plaintiffs are entitled to a removal hearing where they have an opportunity to renew their applications for adjustment of status and seek alternative forms of relief.   Defendants have opposed the motion on the basis of lack of jurisdiction, as well as on the merits of plaintiffs' claims to relief.

## DISCUSSION

I. Preliminary Injunction Standard

The Supreme Court has cautioned that a "preliminary injunction is an extraordinary and drastic remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (*citing Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008)).  Courts must balance the competing claims of injury and consider the effect on each party of granting or denying the injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374; *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir.2009).

II.    Jurisdiction

In opposing the motion for a preliminary injunction, defendants assert three jurisdictional barriers, arguing that (1) the Court lacks jurisdiction to review USCIS's revocation of advance parole; (2) the Court lacks jurisdiction to review decisions of consular officers declining to issue a visa; and (3) the Court lacks jurisdiction to review decisions to commence removal proceedings or execute removal orders. Defendants' Opposition, Dkt. # 42, pp. 12-13. While each of these jurisdictional bars may apply in appropriate cases, none applies here.

(1) Advance parole revocation

Defendants contend that advance parole is a discretionary benefit which is expressly precluded from review under 8 U.S.C. § 1252(a)(2)(B)(ii). The statute states, in relevant part, that "no court shall have jurisdiction to review... (ii) any ... decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of the Attorney General or the Secretary of Homeland Security...." 8 U.S.C. § 1252(a)(2)(B)(ii). Defendants contend that advance parole is a discretionary benefit, citing 8 U.S.C. § 1182(d)(5)(A) (the Secretary may "in his discretion parole in to the United States . . any alien.")

Defendants contend that this case is governed by *Hassan v. Chertoff*, 593 F. 3d 785 (9th Cir. 2010), in which the Ninth Circuit Court of Appeals affirmed a district court ruling that it lacked jurisdiction to consider the revocation of advance parole because the revocation, like the grant of advance parole, is discretionary. *Hassan*, 595 F. 3d at 785. The appellate court's discussion relied on 8 U.S. C. § 1152(d)(5)(A), which states, in relevant part,

> The Attorney General may, . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States. . . .[W]hen the purposes of such parole have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(b)(5)(A). The court also cited to the implementing regulation for this section, which states,

> upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 CFR § 212,5(e)(2)(i). *Hassan*, 593 F. 3d at 790.

Here, it is undisputed that no notice of the advance parole revocation was provided to plaintiffs. Nor was there any actual decision made to revoke the advance parole; according to defendants the revocation was "automatic" upon the denial of plaintiffs' I-485 applications for adjustment of status. That being so, it was not a "discretionary" decision insulated from review by this Court.

Plaintiffs have invoked the notice requirement of § 212,5(e)(2)(i) in their due process claim, arguing that defendants violated the regulation by failing to provide notice of the revocation of their advance parole. Further, they argue that under this section defendants were required to restore plaintiffs to the status they had at the time they received their advance parole. Plaintiffs' Reply, Dkt. # 43, p. 6. In opposition to these claims, defendants asserted at the hearing on this motion that this section applies to

1  parole, not to "advance parole," and therefore not to plaintiffs.[5]   If that is so, then
2  *Hassan*, which was based squarely on 8 CFR § 212.5(e)(2)(i), is inapposite and does not
3  control the result there.  On the other hand, if this section does apply to advance parole,
4  then plaintiffs' due process rights were violated by the failure to give them notice and
5  failure to restore them to their prior status.

6  Defendants also rely on *Hassan* for the assertion that "it is well-settled that the
7  agency's discretionary determination regarding the grant or denial of advance parole, are
8  expressly precluded from judicial review pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)."
9  Defendants' Opposition, Dkt. # 42, p. 12, *citing Hassan*, 593 F. 3d at 789.  However, the
10 *Hassan* court carefully distinguished cases involving constitutional claims, noting that
11 "[h]owever, '[w]e retain jurisdiction to review constitutional claims, even when those
12 claims address a discretionary decision.' " *Hassan*, 593 F. 3d at 789; *quoting Ramirez-*
13 *Perez v. Ashcroft*, 336 F. 3d 1001, 1004 (9th Cir. 2003).  As the Ninth Circuit Court of
14 Appeals has explained, "decisions that violate the Constitution cannot be 'discretionary,'
15 so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Kwai Fun*
16 *Wong v. United States*, 373 F. 3d 952, 963 (9th Cir. 2004); *citing Torres-Aguilar v. INS*,
17 246 F. 3d 1267, 12780 (9th Cir. 2001).  Further, "decisions made on a purely legal basis
18 may be reviewed, as they do not turn on discretionary judgment." *Id*.  The appellate
19 court found on this basis that "the district court properly exercised jurisdiction over
20 Wong's claims regarding advance parole, adjustment of status, and parole revocation. . ."
21 *Id*., at 966.

---

23    [5] On the other hand, defendants cited to § 212,5(e)(2)(i) as the basis for the
   termination of plaintiffs' advance parole in their opposition to the preliminary injunction.
24 Defendants' Opposition, Dkt. # 42, p. 12.

1   The Court finds that *Wong* and cases cited therein control this Court's jurisdiction
2   over plaintiffs' due process and equal protection claims.  Either the automatic revocation
3   of advance parole was not a discretionary decision insulated from review or, even if it
4   was discretionary, plaintiffs' claims are constitutional ones over which the Court may
5   exercise jurisdiction.  *Wong*, 373 F. 3d at 963, 966.   The Court will proceed to the merits
6   of this claim in the section below.

7           (2) Review of the Consular Officer's Action or Inaction

8           Defendants also assert that "the Court lacks jurisdiction to review decisions of
9   consular officers declining to issue a visa."  Defendants' Opposition, Dkt. # 42, p. 13.
10  Defendants base this argument on the doctrine of consular nonreviewability, based on
11  authority noting that "it has been consistently held that the consular official's decision to
12  issue or withhold a visa is not subject to administrative or judicial review."  *Li Hing of*
13  *Hong Kong, Inc.*, *v. Levin,* 800 F. 2d 970, 971 (9th Cir. 1986).   However, this rule
14  applies to the consular official's decision to grant or deny a visa, not to inaction.  *Id*.
15  Thus, a district court has jurisdiction to consider a petition to compel the consular official
16  to take action he has withheld.  *Raduga USA Corp., v. United States Department of State*,
17  440 F. Supp. 2d 1140, 1146 (S.D.Ca. 2005).   Further, there are exceptions to the general
18  rule on nonreviewability, such as when a consular official denies a visa on illegitimate
19  grounds.  *Patel v. Reno*, 134 F. 3d 929, 933 n. 1 (9th Cir. 1997).

20          Plaintiffs have not requested any relief with respect to the visas they requested at
21  the Hyderabad consulate in their motion for a preliminary injunction.  Therefore, while
22  the Court finds no basis for denial of the motion in defendants' "consular

ORDER ON MOTION FOR A PRELIMINARY INJUNCTION - 11

nonreviewability" argument, neither does it find a basis for granting any relief to plaintiffs.

### (3)  Review of a Decision to Commence Removal Proceeding

In their third jurisdictional argument, defendants assert that in general, "[c]ourts lack jurisdiction to review DHS's decision whether or not to commence removal proceedings or execute removal order." Defendants' Opposition, Dkt. # 42, p. 13.  This argument is based on a provision in the Immigration and Nationality Act ("INA") which states in relevant part that "[n]o court shall have jurisdiction to hear any cause or claim . . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).  In *Reno v. Arab-American Anti-Discrimination Comm.*, 525 U.S. 471 (1999), the Supreme Court that the jurisdictional bar in section 1252(g) applies only to the three discrete actions listed in the statute: a decision to *commence* proceeding, *adjudicate* cases, or *execute* removal orders. *Id*. at 482 (emphasis in original).   Section 1252(g) does not apply to bar review of the actions that occur [] prior to any decision to commence proceedings. *Kwai Fun Wong v. United States*, 373 U.S. 952, 965 (9th Cir. 2004).   In that case, the Ninth Circuit court noted that after *American-Arab*, "we have narrowly construed § 1252(g)." *Id*.

As there is neither an already-commenced removal proceeding nor a removal order at issue here, this section does not apply to deprive this Court of jurisdiction over plaintiffs' claims.

### III.  Injunctive Relief

Plaintiffs have requested alternate forms of injunctive relief.   As to their request that the Court set aside the revocation of the I-140 petition and the denials of the I-485

applications, and direct the agency to readjudicate the applications in accordance with applicable statutes and regulations, the Court finds that the record is insufficiently developed at this time for the Court to conduct the proper analysis and grant this relief. The APA claims regarding these petitions and applications will remain subject to further proceedings. However, as to plaintiffs' request that the Court find that they are entitled to a removal hearing where they have an opportunity to renew their applications for adjustment of status, the court finds that they have demonstrated a right to this relief.

(1)    Likelihood of success on the merits:  As demonstrated in the discussion above, plaintiffs have a strong likelihood of succeeding on the merits of the constitutional claim of denial of due process in the revocation of their advance parole and consequent denial of entry at the Chicago airport.  Plaintiffs lived lawfully and productively in the United States for ten years before traveling to India for a brief visit, with advance approval to return.  Defendants stipulated, in an Order filed in this case, to re-open the I-485 applications and to hold this case in abeyance until August 31, 2010. Dkt. #3 17, 24. Yet defendants denied plaintiffs, including the U.S. citizen child, re-entry based on revocation, without notice, of the approved advance parole.

Defendants have not produced any evidence to refute plaintiffs' statement that they were given no notice of the revocation, they were denied an opportunity to speak with counsel, they were told that their case in federal court (this case) had been terminated or withdrawn, and they were threatened with detention if they did not re-board the aircraft and return immediately to India.  Nor have defendants addressed the situation with regard to the U.S. citizen child.

1      In a case presenting much less-troubling circumstances than this one, a district

2 court held that a returning alien whose advance parole was revoked was entitled to a

3 removal hearing before an immigration judge.  *Samirah v. Mukasey*, ---F. supp. 2d ----,

4 2008 WL 450823 (N.D.Ill. 2008).  The court, finding a denial of due process, held that

> [t]he government cannot bypass the mandatory step of a removal hearing by granting plaintiff advance parole, revoking that parole while the plaintiff is outside of the United States, and then refusing to allow him to return to the United States. . . . We agree that we cannot order the Attorney General to commence removal proceedings against plaintiff, but that is not what this order accomplishes.  We simply hold that the Attorney General may not bar the plaintiff from returning to the United States without providing a hearing.  Whether the Attorney General decides to commence removal proceedings or to let plaintiff return to the United States to pursue his application to adjust his status is a matter for the Attorney General's discretion.
>
> . . .
>
> In sum, we hold that the government has a non-discretionary duty to provide plaintiff a removal hearing before removing him from the country, whether that removal is accomplished by normal procedures or by barring his travel to the United States once his advance parole was revoked.  Plaintiff has a clear right to a removal hearing.

*Id*. at  * 4.  Any other outcome, as the court noted, "would render all grants of advance  parole meaningless."  *Id.*   "If the revocation of a grant of advance parole extinguished an alien's right to a removal hearing, the government could save the trouble of holding a removal hearing any time an alien requested advance parole. . . ."  *Id.*    Instead, the government could grant the request, and then revoke the advance parole as soon as the alien departed the United States.  "this new method or removing aliens with advance parole would bypass the congressionally mandated removal procedures found in the INA."  *Id.*

(2)     Likelihood of irreparable harm:  Deportation involves a loss of liberty, such that the government cannot permanently remove aliens from the United States without a removal

hearing. *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). Deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. . . . Meticulous care must be exercised lest the procedures by which he is deprived of that liberty not meet the essential standards of fairness." *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S. Ct. 1443, 89 L. Ed. 2103 (1945).

The harm alleged here is particularly great to the children. The oldest child has submitted a declaration in which she states her wish to continue her studies at the University of Washington to become a physician. Declaration of I.A., Dkt. # 34. The youngest child, a U.S. citizen, is being deprived of the opportunity to live in the country of his birth. Mr. Abdur-Rahman, who with his family has accrued ten years of physical presence in the United States and is eligible for cancellation of removal under 8 U.S.C. § 1229b(b), based on hardship to his son, has been deprived of the opportunity to apply for this status.

(3) Balance of equities: Defendants, by contrast, have alleged no irreparable harm that would accrue to them from the granting of the injunction. The balance of equities thus tips strongly in plaintiffs' favor.

(4) Public interest: The public interest is best served by the orderly and fair treatment of persons subject to the laws of this land, citizens and non-citizens alike. The public interest is also best served when the courts uphold the constitutional rights of individuals who have been aggrieved by government action.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction is GRANTED as to their alternative request for relief, namely that they are entitled to a removal hearing under 8 U.S.C. §1229a, where they can renew their applications for adjustment of status, or seek other forms of relief.

1 | The Court directs defendants to allow plaintiffs to return to the United States within thirty days
2 | of this date.  The time that plaintiffs have spent in India following their forced return on august
3 | 30, 2010 shall not count against them as accrued time outside the United States;  they shall be
4 | deemed to have accrued only 35 days outside the United States for the purposes of 8 U.S.C. §
5 | 1229b(d)(2).

Dated November 10, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR A PRELIMINARY INJUNCTION - 16