UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RASHID ABDUR RAHMAN, et al., | CASE NO. C09-1269 RSM |
| Plaintiff, | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| JANET NAPOLITANO, Secretary of the United States Department of Homeland Security, et al., | |
| Defendant. | |

This matter is before the Court for consideration of the parties' cross-motions for summary judgment. Dkt. ## 99; 103. Plaintiffs, Mr. Rashid Abdur Rahman and family, filed this action for a declaratory judgment and mandamus relief, seeking favorable Court action regarding several immigrant visa petitions filed by Mr. Rahman's former employer on behalf of Mr. Rahman. The Court heard oral argument on this matter on November 8, 2011. For the reasons set forth below, plaintiffs' motion for summary judgment shall be granted, and defendants' motion shall be denied.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*

FACTUAL BACKGROUND

Mr. Rahman, an information technology consultant, legally entered the United States on an H-1B non-immigrant visa that was approved in April 2000. H-1B visas allow aliens to come to the United States temporarily "to perform services or labor for . . . an employer." 8 C.F.R. 214.2(h)(1)(i). The H-1B classification that applied to Mr. Rahman was for performance of "services in a specialty occupation." 8 C.F.R. §§ 214.2(h)(1)(ii)(B)(*1*) & 214.2(h)(4)(i)(A)(*1*).

In 2001, Mr. Rahman changed jobs and his new employer, Goldstone Technologies, petitioned the United States Citizenship and Immigration Service (USCIS) for a new H-1B visa (approved in Nov. 2001). Dkt. #99, p. 1. In March 2002, Mr. Rahman began working for Wiztech. Dkt. #99, p. 2.

Wiztech was incorporated in Maryland in 1998. Dkt. # 99, p. 2. In order to maintain corporate status in the State of Maryland, the corporation must file and pay its annual taxes and unemployment insurance contributions and file an annual report. MD. CODE ANN., CORPS & ASS'NS § 3-503 (West 2011). Wiztech did not file its property return in 2001 and consequently forfeited its charter in 2002.[1] Dkt. # 103, p. 1; 91, p. 77.

However, in 2003, Wiztech filed paperwork with the Illinois Secretary of State so that it could conduct business in Illinois. Dkt. # 91, p. 23. Due to an Illinois statute regarding similarly named corporations, Wiztech operated under an assumed name, "IntelliBytes, Inc.," in Illinois. Dkt. # 91, p. 57. Accordingly, for the purposes of this Order, Intellibytes and Wiztech are synonymous.

---

[1] Wiztech subsequently revived its corporate charter in July 2009, pursuant to MD. CODE ANN., CORPS & ASS'NS § 3-507. Dkt. # 103, p. 1. The question of Wiztech's corporate status for the period between 2002–09 is central to this case.

*a. Wiztech/Intellibytes' H-1B Petitions*

In January 2003, USCIS approved Intellibytes' Form I-129 petition to change Mr. Rahman's employer and extend Mr. Rahman's H-1B status until 2005. Dkt. # 99, p. 2. Again, in 2005, Intellibytes filed and USCIS approved a Form I-129 H-1B petition to extend Mr. Rahman's status until 2006.

In 2006 Intellibytes filed another Form I-129 H-1B petition to extend Mr. Rahman's status until May 2007. Dkt. # 86, p. 297. Again, in 2007, Intellibytes filed an extension request for 2007–08. Dkt. # 99, p. 2–3. In May 2008, Mr. Rahman left Intellibytes and relocated to Seattle, Washington. Dkt. # 91, p. 25. Thereafter, Mr. Rahman accepted a position with Bolton Valley Group (BVG), and BVG filed a Form I-129 petition in June 2008. Dkt. # 99, p. 25; Dkt. 103, p. 4. At this point, neither Intellibytes' 2006 nor its 2007 Form I-129 petitions had been adjudicated.

In June 2008, USCIS issued a Request for Evidence (RFE) for Intellibytes' 2006 and 2007 H-1B petitions; Intellibytes made a timely response. Dkt. # 95, p. 132. Subsequently, in January 2009, USCIS denied Intellibytes' 2006 petition, finding: (1) Intellibytes did not qualify as an "employer" (Dkt. # 86, p. 79), (2) Intellibytes did not comply with the terms and conditions of the Labor Condition Application (Dkt. # 86, p. 82), and (3) the position did not qualify as a "specialty occupation" (Dkt. # 86, p. 83). Because the 2006 petition was denied, the 2007 extension could not be approved, and it was also denied. Dkt. # 96, p. 86.

In March 2009, Intellibytes appealed the denial of both petitions. The Administrative Appeals Office (AAO) dismissed the timely appeals in June 2009. Dkt.# 96, p. 31. In September 2009, plaintiffs filed their complaint with this court, seeking review of the agency's final

decision. Dkt. # 1. USCIS subsequently reopened Mr. Rahman's case *sua sponte*. Dkt. # 103, p. 4–5; 95, p. 27.

Upon reopening Mr. Rahman's case, USCIS reviewed Mr. Rahman's entire administrative record. Dkt. # 95, p. 27. In November 2009, the AAO sent Intellibytes a notice that the findings may be unfavorable, and allowed 30 days for them to respond. Dkt. # 95, p. 27. The AAO issued its final opinion on November 26, 2010. Dkt. # 95, p. 1. In the final opinion, the AAO upheld the denial of Intellibytes' 2006 and 2007 petitions and revoked Mr. Rahman's 2003 and 2005 visas. Dkt. # 95, p. 26.

  *b. Permanent Residence Petitions*

Meanwhile, in parallel, Intellibytes began the process of applying for permanent residence for Mr. Rahman by filing an Application for Employment Certification with the U.S. Department of Labor (DOL). Dkt. # 91, p. 24. The DOL approved the labor certification in September 2006. Dkt. # 91, p. 223. In March 2007, Wiztech continued the process by filing an I-140 petition on behalf of Mr. Rahman. Dkt. # 91, p. 209. Finally, in August 2007, the plaintiffs submitted the final petition (Form I-148) to apply for permanent residence. Dkt. # 9, p. 3.

In April 2009, USCIS issued an RFE for the I-140, and it was subsequently approved in June 2009. Dkt. # 99, p. 3–4. However, after reconsidering the H-1B petitions in late 2009, USCIS issued a notice of derogatory information and RFE with regards to the I-140 in April 2010. Dkt. #91, p. 72. In May, Wiztech responded and withdrew their I-140 petition. Dkt. #91, p. 23. USCIS revoked the I-140 in July 2010. Dkt. # 99, p. 5.

Plaintiffs now move for summary judgment. Dkt. # 99. Plaintiffs ask this court to find USCIS' action arbitrary and capricious and: (1) reverse the decision to revoke Intellibytes' 2003 and 2005 approved H-1B petitions; (2) reverse the decision to deny the 2006 and 2007 H-1B

petitions; (3) reverse the decision to revoke Wiztech's I-140 petition on behalf of Mr. Rahman; (4) reverse the decision to revoke Intellibytes' labor certification; and (5) reverse the decision to revoke Cascade Engineering's approved 2010 H-1B petition. In response, the defendants move for summary judgment, stating that plaintiffs have failed show that USCIS' actions were arbitrary or capricious. Dkt. #103, p. 1.

## ANALYSIS

**I. Standard of Review**

Summary judgment is proper if the pleadings, discovery, affidavits and disclosure materials on file show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a)&(c) (as amended December 1, 2010). However, in cases challenging final agency action, a district court's role is different. *See, e.g. Occidental Engineering Co. v. INS*, 753 F.2d 766 (9th Cir. 1985). The district court "is not required to resolve any facts in a review of an administrative proceeding." *Id*. at 769. Rather, "the agency's factual findings are reviewed for substantial evidence." *Family Inc. v. USCIS*, 469 F.3d 1313, 1315 (9th Cir. 2006). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. An agency's findings should not be set aside "under this deferential standard 'unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result.'" *Family Inc.*, 469 F.3d at 1315 (emphasis in original) (quoting *Monjaraz-Munoz v. INS,* 327 F.3d 892, 895 (9th Cir. 2003), *amended by* 339 F.3d 1012 (9th Cir.2003)).

More specifically, judicial review of final agency action is governed by the "arbitrary or capricious" standard, and the agency decision should only be set aside if it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A). Under this standard, "the reviewing court may not substitute its judgment for that of the agency." *Western Radio Services Co., Inc. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996) (citing *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376 (1989). Rather, the court must determine if the agency decision "was made after considering the relevant factors and whether the agency made a clear error in judgment." *Western Radio Services Co., Inc.*, 79 F.3d at 900 (citing *Marsh*, 490 U.S. at 378). The court may reverse an agency decision if:

> [T]he agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Western Radio Services Co., Inc.*, 79 F.3d at 900 (citing *Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1521 (9th Cir. 1995)). Also, "if [the agency] announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned." *INS v. Yang*, 519 U.S. 26, 32 (1996)); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.").

The question before the court is "whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Natural Resources Defense Council v. U.S. Depart. Of the Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997) (quoting *Pyramid Lake Paiute Tribe of Indians v. U.S. Depart. Of the Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990)). "The agency's factual findings are reviewed for substantial evidence." *Family Inc. v. USCIS*, 469 F.3d 1313, 1315 (9th Cir. 2006). However, an agency's determination of a

purely legal question is reviewed *de novo*. *Meza-Vallejos v. Holder*, 2011 WL 4792882, 3 (9th Cir. 2011).

**II. AAO Jurisdiction**

As a preliminary matter, plaintiffs argue that the I-140 remains approved because the AAO had no jurisdiction to sit as the appellate body on the district director's original decisions. Dkt. # 99, p. 11. "The [AAO] is the appellate body which considers cases under the appellate jurisdiction of the Associate Commissioner, Examinations." 8 C.F.R. § 103.3(a)(1)(iv). "Decisions under the appellate jurisdiction of the Associate Commissioner, Examinations, are listed in § 103.1(f)[(3)] of [8 C.F.R.]." *Id.* at § 103.3(a)(1)(ii). Prior to March 2003, § 103.1(f)(3)(iii) gave the Associate Commissioner appellate jurisdiction over immigration visa petitions. However, in March 2003, the DHS issued a final rule, which deleted the applicable language in § 103.1(f)(3)(iii). Plaintiffs argue that this rule divested the AAO of its appellate jurisdiction for this case. Dkt. # 99, p. 11.

The U.S. District Court for the Northern District of California thoroughly examined a similar argument and was not persuaded. *United States v. Gonzales & Gonzales Bonds and Insurance Agency, Inc.*, 728 F.Supp.2d 1077 (N.D. Cal. 2010). The court found that the AAO's exercise of jurisdiction was proper because the entire appellate procedure "continues to be specified by valid regulations" (in 8 C.F.R. § 103.3), and the Department of Homeland Security validly delegated the appellate jurisdiction to the AAO without formal rulemaking. *Id*. at 1082–85. This Court is also not persuaded, and will not disregard the AAO's decision for lack of jurisdiction.

**III. Wiztech's Corporate Charter**

A primary dispute in this is case involves Wiztech's corporate charter. The final decisions on the H-1B petitions and I-140 petition were based in large part on Wiztech having forfeited its corporate charter between 2002 and 2009. Dkt. ## 95, p. 2–6; 91, p. 2–5. Defendants argue that the permits were properly revoked and denied because the permit applications were not approvable when filed. Dkt. # 103, p. 9. Conversely, plaintiffs argue that when Wiztech revived its corporate status in 2009, it retroactively validated the relevant corporate acts between 2002 and 2009—including the immigration petitions. Dkt. # 99, p. 6–11.

The question of Wiztech's corporate status is purely a question of Maryland law. This court reviews USCIS' interpretation of Maryland law *de novo*. *Meza-Vallejos*, 2011 WL at 3. There is no dispute that Wiztech forfeited its charter in 2002; however, under Maryland law, a corporation may revive a forfeited charter. MD. CODE ANN., CORPS & ASS'NS § 3-507 (West 2011). Upon revival, "all contracts or other acts done in the name of a corporation while the charter was void are validated, and the corporation is liable for them." *Id*. § 3-512. Maryland Courts have "found the clear legislative intent to be that the revival of a corporate charter relates back to the date of forfeiture." *Arnold Developer, Inc. v. Collins*, 567 A.2d 949, 952 (Md. 1990).[2] In other words, "revival of corporate charter restore[s] [corporate] power and authority as if they had never been lost." *Id*. at 953.

The exception is that a corporation is not restored with the rights that it "sold or those of which it was otherwise divested." MD. CODE ANN., CORPS & ASS'NS § 3-512 (West 2011). A

---

[2] Of note, the AAO decision states that *Arnold Developer, Inc* is no longer good law because it cites to *Redwood Hotel, Inc. v. Korbien*, 197 Md. 514, 521 (1951). Dkt. # 95, p. 5. *Redwood Hotel, Inc.* was deemed "no longer good law" by the Court of Special Appeals in Maryland because *Redwood Hotel, Inc.* was decided under a now superseded version of the Maryland Code. *Hill Const. v. Sunrise Beach, LLC*, 952 A.2d 357, 363–64 (Md. Ct. Spec. App. 2008). However, *Arnold Developer, Inc.* was decided under a more recent version of the Code and cites to language identical to the present code for the relevant section: MD. CODE ANN., CORPS & ASS'NS § 3-512.

1  right is typically found to be 'divested' if it passes to a third party or is lost "by an operation of
2  law." *Kroop & Kurland, P.A. v. Lambros*, 703 A.2d 1287, 1294 (Md. App. 1998); *See, also*
3  *Dual, Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095 (Md. 2004); *Cloverfields Imp. v. Seabreeze*
4  *Prop.,* 373 A.2d 935 (Md. 1977); *Hill Construction v. Sunrise Beach, LLC*., 952 A.2d 357 (Md.
5  App. 2008). In *Dual, Inc.*, the plaintiff-corporation filed its initial complaint while its charter was
6  forfeited.  857 A.2d at 1101.  Subsequently, plaintiff revived its corporate charter and filed an
7  amended complaint; however, in the interim, that statute of limitations ran on plaintiff's claim.
8  *Id*. at 1100.  When the claim became time barred, plaintiff was divested of a right to the benefit
9  of the defendant. Accordingly, "under Maryland law, where a corporation's claim is barred by
10 the applicable statute of limitations, that claim is not resurrected thereafter when the
11 corporation's charter is revived." *Id.* at 1103.  Similarly, in *Hill Construction*, the trial court
12 dismissed the plaintiff-corporation's claim when (during litigation) plaintiff forfeited its
13 corporate charter. 952 A.2d at 359.  The reviewing court made note that "in a response to
14 appellees' motion to dismiss, appellant stated that it intended to revive its charter prior to a
15 hearing on the motion. That was not done . . ." *Id*. at 363.  Upon dismissal, plaintiff was divested
16 of a right. When plaintiff subsequently revived the corporate charter, it could not resurrect the
17 right that it lost. *Id*.  The key in all of these cases is that a right is taken from the "corporation"
18 while its charter is forfeited, and revival of the charter cannot reinstate the right.
19         In Wiztech's case, no right was taken from Wiztech while the charter was forfeited.
20 Unlike the 'corporation' in *Hill Construction*, Wiztech revived its charter *before* the issue was
21 raised by the AAO.  In fact, the first time the AAO raised the question of Wiztech's status as a
22 corporation was after Wiztech's charter was revived. Dkt. # 95, p. 2–6.  Additionally, in the
23 context of the USCIS review, unlike traditional litigation, no rights passed from Wiztech to
24

1  another party while the charter was forfeited.  It cannot be said that Wiztech was "divested" of a

2  right.  Therefore, Wiztech's revival of its corporate charter retroactively validated its acts with

3  respect to the immigration petitions.

4      Defendants argue that the petition is governed by federal law and that Maryland's

5  retroactive revival of corporate charters is irrelevant. Dkt. # 106, p. 3–4.  The Federal Circuit

6  Court considered a similar distinction between state and federal law in the context of Article III

7  standing for a patent infringement case.  *Paradise Creations, Inc. v. UV Sales, Inc*., 315 F.3d

8  1304, 1309 (C.A.Fed. 2003) (finding that even if—under state law—corporate revival is

9  retroactive, "it cannot retroactively confer standing in federal court.").  However, the factual

10 distinction in *Paradise Creations, Inc.* was that the 'corporation' was in a state of forfeiture

11 during the relevant patent filings and during litigation. By contrast, in a trademark infringement

12 action, the court allowed the case to proceed even though the appellee was in a state of

13 dissolution at the time it filed the suit, because it revived the charter during the course of

14 litigation.  *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1567, 1580 (Fed. Cir. 1984)

15 (cited with approval in *Paradise Creations, Inc.*, 315 F.3d at 1310). The court looked to state law

16 and found that the corporate revival was retroactive and that the appellee-corporation could

17 "maintain an action begun after dissolution but prior to revival." *Stock Pot Restaurant, Inc.*, 737

18 F.2d at 1580.

19     Similarly, in Wiztech's case, Wiztech revived its corporate charter during the course of

20 the administrative proceedings.  The revival had retroactive effect.  *See, e.g. Arnold Developer,*

21 *Inc.*, 567 A.2d 949. It was only after Wiztech revived the charter that the AAO discovered

22 Wiztech had previously forfeited its corporate charter.  Therefore, it is not in accordance with

23 law for the AAO to base its decision on a finding that (under Maryland law) Wiztech did not

24

1  exist as a corporation, when in fact (under Maryland law) Wiztech did exist as a corporation.
2  Thus, to the extent that AAO's decision was based on Wiztech's corporate status, it is reversed,
3  because it was "not in accordance with law." 5 U.S.C. § 706(2)(A).

**IV. H-1B Visas**

*a. Intellibytes's 2003 & 2005 H-1B visas*

An H-1B nonimmigrant visa enables aliens to be temporarily admitted to the United States to "perform services . . . in a specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Procedurally, the employer petitions USCIS on behalf of the alien beneficiary. In addition to USCIS' authority to review and grant or deny petitions, USCIS also has the authority to revoke an approved petition. *See* 8 U.S.C. § 1155. Depending on the circumstances, an approved petition may be automatically revoked or revoked on notice. 8 C.F.R. § 205.1–205.2. A petition may be automatically revoked upon one of several specifically enumerated occurrences, including "termination of the employer's business in an employment-based preference case." 8 C.F.R. § 205.1(a)(3)(iii)(D). A petition may be revoked on notice "on any ground other than those specified in § 205.1 when the necessity for the revocation comes to the attention of this Service." 8 C.F.R. § 205.2(a).

The AAO's final decision (Nov. 2010) ordered the automatic revocation of Intellibytes's 2003 and 2005 H-1B visas. Dkt. # 95, p. 26. The decision was based on the finding that Wiztech's charter was forfeited and that Intellibytes' business was consequently terminated. Dkt. # 95, p. 1–6 (citing 8 C.F.R. § 205.1(a)(3)(iii)(D)). As previously discussed, for the purposes of this adjudication, the AAO's determination of Intellibytes's corporate status was "not in accordance with law." 5 U.S.C. § 706(2)(A).

1    As noted in the AAO opinion, if the corporate status was not the determining issue the
2 visas could only be revoked on notice. Dkt. # 95, p. 26.  The AAO's remaining justification for
3 revocation is that USCIS's prior approvals constituted "material and gross errors on the part of
4 the directors." Dkt. # 95, p. 26.  Specifically, the AAO determined that there was insufficient
5 evidence in the record pertaining to the 2003 and 2005 petitions to qualify for an approved H-1B
6 visa.  Automatic revocation is permissible in specifically enumerated circumstances, and "gross
7 errors on the part of the directors" is not among them. *See* 8 C.F.R. § 205.1(a)(3)(iii).  Thus,
8 because the AAO gave no notice and the decision relied on an automatic revocation of the 2003
9 and 2005 H-1B it was an abuse of discretion.

10    Accordingly, as to the 2003 and 2005 visas, this court finds reversal appropriate. *See*
11 *Western Radio Services Co., Inc.*, 79 F.3d at 900.  Because this is not a matter of agency
12 discretion, the court vacates defendants' decision and orders defendants to re-instate the 2003
13 and 2005 H-1B visas as of the date of their original approval.

14    Further, even if USCIS had revoked the 2003 and 2005 approved petitions on notice,
15 finding that the beneficiaries retroactively accumulated unlawful status would have constituted
16 an abuse of discretion. USCIS' authority to revoke previously approved petitions derives from 8
17 U.S.C. § 1155, which states that "[t]he Secretary of Homeland Security may, at any time, for
18 what he deems to be good and sufficient cause, revoke the approval of any petition approved by
19 him under section 1154 of this title. Such revocation shall be effective as of the date of approval
20 of any such petition." Whatever Congress' intent was in enacting § 1155, it could not have been
21 to give USCIS the authority to revoke an approved visa—retroactively putting beneficiaries out
22 of lawful status and potentially destroying the beneficiaries' chance of obtaining lawful
23 permanent residence—because USCIS discovers that a director did not require additional
24

evidence to adjudicate and approve the petition. Retroactively placing plaintiffs in unlawful status essentially sanctions plaintiffs for behavior that was not deemed unlawful when it occurred. *See, e.g. Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir. 1970) (stating "to say to these appellants, 'the joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government."); Dkt. # 99, p. 30.

    *b.   Intellibytes's 2006 & 2007 H-1B Petitions*

Intellibytes's 2006 and 2007 H-1B petitions were denied by USCIS in 2009. Dkt. # 96, p. 79. Plaintiffs claim that USCIS' two-year delay in adjudicating the petitions arbitrary and capricious because it prevented Intellibytes from providing any meaningful response. Dkt. # 99, p. 15–23. When USCIS ultimately denied Intellibytes's 2006 and 2007 H-1B petitions, it concluded that Intellibytes did not qualify as an employer, and that the record of evidence did not sufficiently establish the other requirements for H-1B approval. Dkt. # 96, p. 79–85.

Because the employer petitions on behalf of the beneficiary, a threshold determination is whether the petitioner qualifies as an employer. 8 C.F.R. § 214.2(h)(4)(ii). An employer is:

> [A] person, firm, corporation, contractor, or other association or organization in the United States which: (1) engages a person to work within the United States; (2) has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee; and (3) has an Internal Revenue Service Tax identification number.

8 C.F.R. 214.2(h)(4)(ii). The AAO decided that Intellibytes was not an "employer" under the definition because Intellibytes did not "supervise, or otherwise control" Mr. Rahman's work. 8 C.F.R. 214.2(h)(4)(ii)(2); Dkt. # 95, p. 7–9. This finding was based in large part on a 'gap' in the record: there is no formal written contract between Mr. Rahman and Intellibytes. *See, e.g.* Dkt. # 96, p. 12. Importantly, the regulations do not require petitioners to submit formal written contracts. *See* 8 C.F.R. § 214.2(h)(4)(iv)(B) (listing various forms of supporting evidence

ORDER - 13

1  including "[c]opies of any written contracts between the petitioner and beneficiary, *or a*
2  *summary of the terms of the oral agreement under which the beneficiary will be employed, if*
3  *there is no written contract*" (emphasis added)). In Intellibytes's petition to extend Mr.
4  Rahman's status, Intellibytes provided a summary of its agreement with Mr. Rahman and stated
5  that it did not execute a formal written contract until the H-1B visa was placed into the
6  beneficiary's passport. *See, e.g.* Dkt. # 96, p. 174; 290–91.

7        Intellibytes did not contest USCIS' authority to request formal contracts in some
8  instances. Dkt. # 96, p. 176. And, it is unnecessary for this court to determine if USCIS had the
9  authority to request a formal contract in this instance. However, by delaying the RFE for over
10 two years after the application date, USCIS placed Intellibytes and the beneficiary in an
11 impossible situation. Intellibytes provided a summary of the agreement, per 8 C.F.R. §
12 214.2(h)(4)(iv)(B), and was unaware that USCIS would request a formal written contract until
13 the RFE was issued in 2008. By 2008, Mr. Rahman had changed employers and it was
14 impossible for Intellibytes to retroactively create a formal written contract. In other words, by
15 delaying the adjudication, USCIS precluded Intellibytes from executing a formal written
16 contract, which then became grounds for ultimately denying the petition. By the time USCIS
17 requested the evidence, the summary of the agreement was the only possible information to
18 explain the employment relationship, and USCIS abused its discretion by disregarding it. *See,*
19 *e.g. Hong Kong T.V. Video v. Ilchert,* 685 F.Supp. 712, 717 (N.D. Cal. 1988) (finding that the
20 agency abused its discretion when it disregarded the only evidence in the record on a pertinent
21 issue).

22       Defendants point to various other gaps in the record and emphasize that the petitioner
23 bears the burden of proving that it qualifies for an H-1B visa. Dkt. ## 103, p. 14–15 (citing
24

*Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1213 (9th Cir. 2002)); 95, p. 23–24.  The AAO concludes that it was within the district director's discretion to deny the petition in the first instance.  Dkt. # 95, p. 23–24.  In other words, the RFE was unnecessary and the petitioner's concern about the delay is immaterial.

This court finds the AAO's reasoning unpersuasive.  An "agency abuses its discretion when it fails to provide a reasoned explanation for its actions." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) *See also Tapis Int'l v. INS*, 94 F. Supp. 2d 172, 174 (D. Mass. 2000) (citing *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1162 (D. Minn. 1999)) (noting that an agency abuses its discretion if its "decision is inconsistent with the agency's own precedent.").  And, merely basing a decision on conclusory statements is insufficient.  *See, e.g. The Button Depot, Inc. v. DHS*, 386 F. Supp. 2d 1140, 1149(C.D. Cal. 2005) (finding that the agency's conclusory statements were insufficient to explain its position). While an agency is not bound by a prior administrative error, it must rationally explain the discrepancy. *Sussex Egn'g, Ltd. V. Montgomery*, 825 F.2d 1084, 1090 (6th Cir. 1987) (stating that the agency should not be bound by an action that was clearly an oversight).

Here, as in *Sussex Eng'g, Ltd.*, USCIS' explains the discrepancy by concluding that the prior decisions were made in "error." Dkt. # 96, p. 26.  However, USCIS' conclusory, one paragraph claim that the decisions were made in error does not provide a reasoned explanation and is unsupported by the evidence.  USCIS received similar documentation and approved two H-1B petitions and Wiztech's I-140 petition over the span of several years.  This is not analogous to an isolated administrative oversight.  This court cannot agree with the conclusion that USCIS' district directors are so incompetent that three different directors would make the same 'mistake' on Intellibytes' petitions over the course of more than 5 years.

1    By repeatedly granting the petitioner's requests, USCIS led the petitioner and beneficiary
2 'down the garden path,' causing them to believe that their petitions were sufficient.  The detailed
3 RFE in response to the 2006 and 2007 petitions was a significant change in USCIS' approach.
4 Of course USCIS may, without formal rulemaking, change its interpretive rules or statements.
5 *See, e.g. Miller v. California Speedway Corp.*, 536 F.3d 1020 (9th Cir. 2008).  However, by
6 coupling such a dramatic change in its requirements with an excessive delay, USCIS—by its
7 own actions—effectively prevented this petitioner from satisfying the requirements.

8    USCIS abused its discretion when it based its decision on the absence of evidence,
9 which—by the time USCIS requested it—Intellibytes could not procure.  Most poignantly, in the
10 initial appeal, the AAO discredited the evidence—which the petitioner provided in response to
11 the RFE—because the AAO required "independent and objective evidence," which it defined as
12 "evidence that is contemporaneous with the event that is to be proven." Dkt. # 96, p. 82.  Finding
13 such evidence is undoubtedly an impossible task when the RFE is issued years after the "event
14 that is to be proven." Dkt. # 96, p. 82.

15    Accordingly, this Court reverses the agency's ruling on Intellibytes's 2006 and 2007
16 petitions and remands the matter to the agency for reconsideration consistent with this opinion.

17 **V. I-140**

18    Pursuant to the Immigration and Nationality Act, there is a three-part process for an alien
19 in the United States to become a permanent resident based on an employment opportunity.  First,
20 the prospective employer must apply for a labor certification from the Department of Labor,
21 which ensures that admitting the alien worker to the United States will not adversely affect the
22 American work force.  *See, e.g.* 8 U.S.C. § 1182(a)(5)(A)(i). Second, the prospective employer
23 submits a Form I-140 to petition USCIS to classify the alien in one of several categories—
24

1  including "[a]liens who are members of the professions holding advanced degrees." 8 U.S.C.
2  1153(b)(2). Third, the alien beneficiary files an I-485, petitioning USCIS to adjust his status to
3  become a lawful permanent resident. 8 U.S.C. § 1255.

4  In 2000, Congress passed the American Competitiveness in the Twenty-First Century Act
5  of 2000. Pub.L. No. 106–313. Under the act, if the I-485 petition remains unadjudicated for more
6  than 180 days, an approved I-140 petition will "remain valid with respect to a new job if the
7  individual changes jobs or employers if the new job is in the same or similar occupational
8  classification as the job for which the petition was filed." 8 U.S.C. § 1154(j). This is commonly
9  referred to as the "Portability Provision." Under the Portability Provision, if the petitioning
10 employer received an approved I-140, the alien could file his I-485 and (if it remained
11 unadjudicated for 180 days) change jobs and the approved I-140 would 'port' to the new
12 employer. USCIS also retains the authority to revoke approved I-140 petitions at any time,
13 either automatically or on notice (as discussed *supra*). 8 C.F.R. §§ 205.1 & 205.2.

14 In this instance, the AAO issued a notice of derogatory information in April 2010 and
15 gave the petitioners an opportunity to respond with evidence. Dkt. # 91, p. 72. In July the AAO
16 decided that the "approval was automatically revoked," but that revocation on notice would have
17 been appropriate in the alternative. Dkt. # 91, p. 2, 6. As discussed *supra*, the AAO's reasoning
18 for automatic revocation is "not in accordance with law." 5 U.S.C. § 706(2)(A).

19 However, because the AAO gave the petitioners notice and an opportunity to respond
20 with regard to the I-140 petition, the AAO had the authority to revoke the petition on notice. 8
21 C.F.R. § 205.2. Nevertheless, the AAO did not rationally explain its conclusion. Preliminarily,
22 the AAO disregarded petitioner's request to withdraw its approved I-140 petition in May 2010.
23 Dkt. # 91, p. 11–12. The AAO reasoned that Wiztech's counsel was improperly appointed
24

during the time that Wiztech's corporate charter was forfeited. Dkt. # 91, p. 12.  This reasoning is not in accordance with law, and the AAO's decision to disregard the withdrawal on this ground was improper.

The AAO also found that because the I-140 was never valid, the petitioner could not withdraw the I-140 for portability purposes. *See, e.g.* Dkt. #91, p. 6, 10 n. 6.  However, the AAO's conclusion suffers from circular reasoning.  According to the AAO, the I-140 could not be withdrawn because it was never valid, but it was never valid because Wiztech could not prove that it continued to be valid after it was withdrawn. *See* Dkt. # 91, p. 6–11.[3] This reasoning does not provide a rational explanation for the agency's action and constitutes an abuse of discretion.[4]

Accordingly, the Court reverses the AAO's decision to revoke the previously approved I-140, and remands the matter to the agency for reconsideration consistent with this opinion.

**VI. Labor Certification**

USCIS revoked Intellibytes' labor certification without notice when it reviewed Mr. Rahman's file in 2010.  Dkt. #91, p. 13–16.  By statute, DHS (and by extension USCIS) has the authority to revoke a labor certification for fraud or willful misrepresentation.  20 C.F.R. §§ 656.30(d) & 656.32.  Defendants base their finding of 'misrepresentation' on the issue of Wiztech's corporate charter.  Dkt. # 91, p. 15.  As this court previously discussed, USCIS'

---

[3] USCIS previously approved the I-140. *See, e.g.* Dkt. # 91, p. 6.  Thereafter, the AAO found that I-140 was never valid because Wiztech did not show a *continuing* ability to pay Mr. Rahman. Dkt. # 91, p. 6–11. Wiztech did not show a continuing ability to pay because it did not submit 2008 and 2009 tax returns. Dkt. # 91, p. 6–11. Wiztech did not submit 2008 and 2009 tax returns because it already withdrew the approved petition. Dkt. # 91, p. 22–23. Further, Wiztech withdrew its approved petition because Mr. Rahman sought employment elsewhere. *See, e.g.* Dkt. # 103, p. 4. Thus, if Mr. Rahman's employment was the "same or similar occupational classification," then the approved I-140 would port to the new employer. 8 U.S.C. § 1154(j)

[4] Further, the agency relied on factors which Congress did not intend for the agency to consider.  8 U.S.C. § 1154(j) clearly allows an alien to change employment before his application for permanent residence is fully adjudicated. Congress could not have intended for USCIS to revoke an approved petition if the alien changes employment and the former employer fails to submit financial records into the future after the petition is withdrawn.

determination was "not in accordance with law." 5 U.S.C. 706(2)(A). Thus, USCIS did not have the authority to revoke the labor certification.

Therefore, this court finds that the labor certification remains valid as of the date it was originally approved. Also, at this point, for the purposes of 20 C.F.R. 656.30(b)(2), the I-140 petition shall be deemed filed in March 2007.

**VII. 2010 H-1B Petition**

Finally, plaintiffs challenge USCIS' revocation of Cascade Engineering's 2010 H-1B petition. Because USCIS' decision to revoke the 2010 H-1B was based on the automatic revocation of Wiztech's I-140 (*See* Dkt. # 103, p. 29), and because this court has found that the I-140 was improperly revoked (*supra*, § VI), USCIS' H-1B decision cannot be upheld.

Accordingly the court remands the H-1B petition to USCIS for reconsideration consistent with this opinion.

## CONCLUSION

For the foregoing reasons the court shall grant plaintiffs' motion for summary judgment and deny the Defendants' motion for summary judgment.

Regarding the 2003 and 2005 H-1B petitions, the court finds that the agency action was not in accordance with law because the agency relied on an improper determination of Wiztech's corporate status. Because this was not a matter of agency discretion, the court vacates the defendants' decision and orders defendants to re-instate the visas as of the date of their original approval.[5]

Regarding the 2006 and 2007 H-1B petitions, the court finds that the agency abused its discretion by faulting the petitioner for not providing evidence which the agency, by its own

---

[5] E.g. *Grace Korean United Methodist v. Chertoff*

actions, effectively precluded the petitioner from generating. The court reverses the defendants' decision and remands the matter to the agency for reconsideration consistent with this opinion.

Regarding the I-140, the court finds the agency's action arbitrary and capricious because the agency failed to articulate a rational explanation for its decision and also relied on factors not intended by Congress. The court reverses the defendants' decision and remands the matter to the agency for reconsideration consistent with this opinion.

Regarding the labor certification, the court finds that the agency action was not in accordance with law because it relied on an improper determination of Wiztech's corporate status. Because USCIS consequently had no authority to revoke the certification, the court finds that the certification remains valid as of the date it was originally approved.

Regarding the 2010 H-1B visa, the court finds that the basis for the decision is no longer valid because it was based on agency action which the court has, in this opinion, reversed. The court remands the matter to the agency for reconsideration consistent with this opinion.

Dated this 9th day of December 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE